**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) No. 09-CR-36-TCK |
| | ) |
| **LORENZO MIRANDA-VILLALOBOS,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Suppress (Doc. 19), wherein Defendant Lorenzo Miranda-Villalobos ("Lorenzo") argues that he did not understand the officers' questions and statements" and therefore "could not have given an intelligent consent or search warrant waiver to search his home." (Mot. to Suppress 1.) On April 13, 2009, the Court conducted an evidentiary hearing during which the Government presented the testimony of Tulsa Police Officers Randy Mackenzie ("Mackenzie"), Jeff Eddings ("Eddings"), and David Brice ("Brice) (collectively "officers"). Defendant testified on his own behalf and was the only witness for the defense.

**I.     Factual Background**

On February 5, 2009, the officers received a tip from a confidential informant that unknown Hispanic males were selling cocaine from an apartment located at 7460 E. 49th Street ("apartment"). At the time they received the tip, the officers were working undercover, were wearing street clothes, and were driving an unmarked vehicle. At approximately 9:30 pm on February 5, 2009, Mackenzie and Brice conducted a warrantless search of the apartment. Present during the search were Lorenzo, a Hispanic male who resided in the apartment; Guadalupe Delatora ("Delatora"), a second Hispanic male who resided in the apartment; two other Hispanic males; and one Caucasian female.

1

During the search, officers located an unlocked safe in Lorenzo's bedroom. The safe contained cash, cocaine, a pistol, baggies, a digital scale, an empty holster, and some type of badge. Officers also found a box of sandwich baggies, the key to the safe, and a "speed loader" with five rounds of ammunition in Lorenzo's bedroom. After locating this contraband, officers arrested Lorenzo and initiated questioning. In Delatora's bedroom, officers located other contraband, including cash, cocaine, and a digital scale.[1]

During the evidentiary hearing held by the Court, the officers and Lorenzo presented different versions of the events leading to the search of Lorenzo's bedroom and Lorenzo's eventual arrest. Mackenzie testified that (1) Mackenzie knocked on the door and asked if Mackenzie and Eddings could come inside; (2) Lorenzo expressly consented to their entry into the apartment by saying "come in;" (3) while Mackenzie and Lorenzo were in the kitchen area, Mackenzie asked Lorenzo if he could search the apartment for cocaine; (4) Lorenzo expressly consented to search of the apartment; (5) Lorenzo indicated to Mackenzie the location of his bedroom; (5) following the search and arrest, Mackenzie read Lorenzo *Miranda* warnings; and (6) Lorenzo expressly waived his *Miranda* rights and answered several questions. Mackenzie admitted that he did not obtain a written consent to search or written waiver of *Miranda* warnings but testified that he did not have these documents with him because he was working undercover. In contrast, Lorenzo testified that (1) Mackenzie and Eddings did not knock but instead barged in the door when an occupant of the apartment opened the door to exit; (2) Lorenzo understood very little of what the officers said during the encounter because he does not understand English; (3) Lorenzo did not consent to entry into the

---

[1] Delatora is the defendant in another case pending in the Northern District of Oklahoma, 09-CR-37-CVE.

home; (4) Lorenzo did not consent to search of the apartment or his bedroom; and (5) Lorenzo was not read any *Miranda* warnings.

Lorenzo moves to suppress all evidence seized during the search of his room, arguing that it was seized during a warrantless search for which no exception applies.[2] Lorenzo further argues that, even assuming he consented to the entry or search, such consent was not voluntary because it was the product of coercion. Lorenzo also moves to suppress any statements he made following his arrest, arguing that such evidence was fruit of the unlawful search. The Government contends that the search was lawful pursuant to the "consent" exception to the warrant requirement.

**II.     Discussion**

In general, the "proponent of a motion to suppress bears the burden of proof." *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994). However, "[t]he government has the burden of proving valid consent to a warrantless search." *United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998). In order to meet its burden of proof, the Government must satisfy a two-part test. "First, it must present clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." *Id.* (quotations omitted). "Second, the government must show that the police did not coerce the defendant into granting his consent." *Id.*

---

[2] It is not clear from Lorenzo's motion whether he also seeks to suppress evidence seized from Delatora's room. However, Lorenzo did not make any arguments regarding Delatora's English-speaking ability or the validity of Delatora's alleged consent. Therefore, the Court construes the motion as applying only to the evidence seized from Lorenzo's room.

A.   Valid Consent

After considering all testimony presented and weighing the credibility of witnesses, the Court finds: (1) Mackenzie knocked and requested entry into the apartment; (2) Lorenzo opened the door; (3) Mackenzie and Eddings showed them the police badges around their necks and identified themselves as police officers; and (4) Lorenzo understood that they were police officers, understood the officers' request to enter the apartment, and gave express, unequivocal consent to enter the apartment. The Court does not believe Lorenzo's testimony that the officers barged into the apartment without knocking or requesting consent. The Court further does not believe Lorenzo's testimony that the officers barged into the apartment at the precise moment a person was exiting the apartment.[3]

The Court further finds: (1) Mackenzie requested permission from Lorenzo to search the apartment; and (2) Lorenzo understood this request, granted permission to search the apartment, and told Mackenzie which bedroom in the apartment belonged to him.[4] The Court does not believe Lorenzo's testimony that he never understood or spoke to any officer during the time the officers

---

[3] The Court believes the officers' testimony that they were conducting a "knock and talk." The Tenth Circuit has held that a "knock and talk" is a "consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion." *United States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir. 2006). Thus, there was no constitutional infirmity with the officers' decision to conduct a "knock and talk" as means of gaining entry into the apartment. The question is whether, once they "knocked and talked," Lorenzo gave valid consent to enter and/or search the apartment.

[4] By granting permission to search the apartment and informing Mackenzie of the location of his room, Lorenzo certainly gave consent for the search of his own bedroom. The Court does not reach the question of whether Lorenzo's consent to search the "apartment" gave the officers authority to search Delatora's room, nor has this issue been briefed. The Court also does not reach the question of whether Delatora gave valid consent to search Delatora's bedroom or any other area of the apartment.

were in the apartment. Further, the Court does not believe Lorenzo's testimony that he does not speak English well enough to understand the officers' requests for consent to enter and/or search the apartment. All officers testified that they did not know Spanish, that they spoke to Lorenzo exclusively in English, that Lorenzo understood their questions, that Lorenzo responded appropriately to their questions in English, and that they had no reason to believe Lorenzo needed a Spanish interpreter in order to provide valid, intelligent consent. This testimony was credible and consistent. For example, Mackenzie testified that he asked Lorenzo if anyone else was in the apartment and that Lorenzo responded by stating that "Saige" was in the bedroom. Saige was then located by the officers in a bedroom.

In contrast, Lorenzo contradicted himself on the stand by stating that he did not understand English but then relaying a conversation he had with Eddings regarding Eddings' belief that a certain truck belonged to Lorenzo. Lorenzo recited details of this conversation, including that Eddings told Lorenzo he had seen Lorenzo driving that truck and that Lorenzo told Eddings the truck did not belong to him. Eddings does not speak Spanish, and this exchange necessarily took place in English. In addition, Lorenzo has lived in the United States for almost twenty years.

The issue of consent essentially turns on a credibility determination. The officers' testimony that Lorenzo understood and spoke English and that Lorenzo provided consent for entry and search of the apartment is more credible than Lorenzo's testimony that he did not understand English and did not provide consent. Accordingly, the Court finds that Lorenzo gave specific, unequivocal, and intelligent consent for the officers to enter and search the apartment. *See Pena*, 143 F.3d at 1366-67 (affirming district court's finding of consent where (1) officers testified that defendant responded "go ahead" when asked permission to search, (2) officers testified that, although the defendant had

a strong Spanish accent, the defendant had no trouble conversing with him in English, (3) officer testified that the defendant had a conversation with officers en route to jail, and (4) the defendant answered a question on the stand that had been asked in English before it was translated for him).[5]

### B. Coercion

The Government must also prove that the officers did not coerce Lorenzo into granting his consent. In determining whether a defendant's granting of consent is free from coercion, a court should consider, among other things: (1) any physical mistreatment by the officers; (2) any use of violence, threats, threats of violence, promises or inducements, deception or trickery by the officers; and (3) the physical and mental condition and capacity of the defendant within the totality of the circumstances. *Pena*, 143 F.3d at 1367. Other relevant factors include whether the officers informed the defendant that he could refuse or withdraw consent and the number of officers present on the scene. *Id.* "An officer's request for consent to search does not taint an otherwise consensual encounter as long as the police do not convey a message that compliance with their request is required." *Id.* (quotation omitted).

Lorenzo's "coercion" argument is based on the "special vulnerability" of a Hispanic person and the number of officers present. (*See* Mot. to Suppress 13 (arguing that "[t]o question a Spanish/Mexican person without an interpreter, through a surprise visit by three police officers at his home, is inherently coercive and amounts to a detention").) Lorenzo further contends that the

---

[5] Lorenzo seems to argue that the officers had an obligation to obtain a Spanish interpreter simply because they knew Lorenzo was Hispanic. However, the *Pena* case belies this legal argument; the defendant in that case was Hispanic, had a strong Spanish accent, and yet gave valid consent in absence of an interpreter.

Case 4:09-cr-00036-TCK   Document 24 Filed in USDC ND/OK on 04/15/09   Page 7 of 8

officers were engaging in "deception and trickery" by seeking consent to search when they knew Lorenzo needed an interpreter.

For reasons explained above, the Court finds that Lorenzo understood the officers' requests for consent and was able to provide voluntary, intelligent consent. Thus, the "special vulnerability" argument is not persuasive.[6] Further, the Court finds no other circumstances that would support a finding of coercion. Although three officers were present, they did not engage in any behavior that would render their presence so intimidating that Lorenzo felt coerced to consent to entry or search of the apartment. Specifically, the officers' weapons were hidden inside their waist bands and were never brandished or unholstered at any time, the officers did not engage in any threatening or intimidating behavior, and the officers did not conduct a lengthy interrogation of Lorenzo prior to gaining consent. Instead, the entire encounter was calm, and consent was readily and easily obtained. The only factor potentially counseling in favor of coercion is that the officers did not inform Lorenzo that he could refuse or withdraw his consent. Considering the totality of the circumstances, the Court finds that the Government has satisfied its burden of proving that Lorenzo's consent was not a product of coercion. *See United States v. Cruz-Mendez*, 467 F.3d 1260,1266-67 (10th Cir. 2006) (affirming district court's conclusion regarding a lack of coercion where, although there were "several armed officers," the officers were not overly threatening or forceful, there was not a "lengthy interrogation"); *Pena*, 143 F.3d at 1367 (affirming district court's conclusion regarding a lack of coercion where three armed officers were present during consent, but

---

[6] Lorenzo cited cases in which the defendant was "specially vulnerable" because officers awakened him in the middle of the night. *See, e.g.*, *Harless v. Turner*, 456 F.2d 1337, 1338 (10th Cir. 1972) (consent was not voluntary when two officers entered home at 1:45 am, routed defendant out of bed, and questioned him before seeking consent). In this case, the search occurred around 9:30 pm, and all occupants of the home were awake when the officers arrived.

7

none of the officers unholstered their firearms, all officers remained outside the motel room until defendant gave them permission to enter, and officers did not otherwise conduct themselves in any "unprofessional manner").

Defendant's Motion to Suppress (Doc. 19) is DENIED.

IT IS SO ORDERED this 15th day of April, 2009.

_____
TERENCE KERN
United States District Judge